## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEVEN KERR | ) | |
| KAREN KERR | ) | |
| | ) | |
| (Addresses filed under seal) | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  1:25-cv-3190 |
| | ) | |
| ISLAMIC REPUBLIC OF IRAN, | ) | |
| Ministry of Foreign Affairs | ) | |
| Imam Khomeini Street | ) | |
| Imam Khomeini Square | ) | |
| Tehran, Iran 1136914811 | ) | |
| | ) | |
| Defendant. | ) | |

**************************************************************

### COMPLAINT

Plaintiffs, by and through their undersigned counsel, seek judgment against Defendant, the Islamic Republic of Iran, pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A, and applicable state and common law.

## I.   INTRODUCTION

1.      This action is brought by plaintiffs through counsel against the Islamic Republic of Iran (hereinafter "Iran") for orchestrating the June 25, 1996, bombing of the United States Air Force facility at the Khobar Towers in Dhahran, Saudi Arabia. The bombing killed 19 American servicemembers and wounded hundreds of others. Plaintiffs are one (1) injured American servicemember who suffered mental and emotional injuries in the bombing and his immediate family member. Plaintiffs seek compensatory and punitive damages as provided by 28 U.S.C. §1605A(c).

## II.    <u>JURISDICTION AND VENUE AND CHOICE OF LAW</u>

2.    Jurisdiction in this Court arises pursuant to 28 U.S.C. §§ 1605A, 1330(a), 1331, and 1332(a)(2).

3.    Defendant Iran is subject to suit in the courts of the United States as a sponsor of the terrorist group Hezbollah pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A(a), and related statutes, including Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j), Section 40 of the Arms Export Control Act (22 U.S.C. § 2780), and Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371), which designated Iran as a state sponsor of terrorism.

4.    28 U.S.C. § 1605A provides a federal private right of action against foreign state sponsors of terror for personal injury or death caused by acts of terrorism and providing for damages including economic damages, solatium, pain and suffering, and punitive damages. 28 U.S.C. § 1605A(c).

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).  Actions for personal injury, death, and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees, and agents fall within the meaning of 28 U.S.C. § 1605A generally.

## III.    <u>PARTIES</u>

### A.  PLAINTIFFS

6.    Plaintiff **Steven Kerr** is a United States citizen. At the time of the acts alleged herein, Steven was a Senior Airman in the U.S. Air Force stationed at Ellsworth Air Force Base, South Dakota, deployed to Dhahran, Saudi Arabia and quartered at Khobar Towers. He worked as a firefighter rescueman/crew chief assigned to the 4404th Expeditionary Civil Engineering Squad.

7.      Plaintiff **Karen Kerr** is a United States citizen. She is the wife of Plaintiff **Steven Kerr**.

### B. DEFENDANT

8.      Defendant Iran is a foreign state within the meaning of 28 U.S.C. § 1391(f) and has been designated a state sponsor of international terrorism by the U.S. Department of State pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)), Section 40 of the Arms Export Control Act (22 U.S.C. § 2780), and Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) continuously since January 19, 1984. Iran provided material support and resources to Hezbollah, a politico-paramilitary terrorist organization, within the meaning of 18 U.S.C. § 2339A.

9.      Two divisions of Iran's government, the Iranian Ministry of Information and Security (MOIS) and the Islamic Revolutionary Guard Corps (IRGC) participated in the plan to attack Khobar Towers.

10.     MOIS is Iran's intelligence service and functions both within and beyond Iranian territory. MOIS, acting as an agent of Iran, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A, that caused the events which gave rise to plaintiffs' injuries. Specifically, MOIS acted as a conduit for Iran's provision of funds, training and direction to Hezbollah for its terrorist activities, including the actions relating to the bomb attack on the Khobar Towers complex of Dhahran, Saudi Arabia on June 25, 1996.

11.     IRGC is a non-traditional agency or instrumentality of Iran. It is the military arm of a kind of shadow government answering directly to the Ayatollah and the mullahs who hold power in Iran. It is similar to the Nazi party's SA organization prior to World War II. It has its own

3

separate funding sources, derived from confiscation of the assets of the former Shah of Iran in 1979, when the Shah was deposed.

12.    The IRGC, with its own separate ministry, has evolved into one of the most powerful organizations in Iran and functions as an intelligence organization, both within and beyond Iran's borders. The IRGC exerts considerable influence on the government policies of Iran. It has become a powerful military instrument for defending and furthering Iran's Islamic fundamentalist revolution and is dedicated to the export of Islamic fundamentalist principles throughout the world through acts of terrorism.  The IRGC actively supports terrorism as a means of protecting the Islamic revolution that brought the Ayatollah to power in Iran in 1979.

13.    The IRGC, acting as an agent of Iran, performed acts within the scope of its agency - and within the meaning of 28 U.S.C. § 1605A and § 1605A note – in providing funds, training, and direction to Hezbollah for its terrorist activities, including the June 25, 1996 terrorist attack on Khobar Towers, as described below.

## IV.    STATEMENT OF FACTS

### *The Attack on Khobar Towers*

14.    The Khobar Towers was a residential complex in Dhahran, Saudi Arabia, which housed the coalition forces charged with monitoring compliance with U.N. Security Council resolutions.

15.    The United States' military presence in Saudi Arabia was with the consent of that host country.  It was part of a coalition of forces, primarily from the United States, Great Britain, and France that was charged with monitoring Iraq's compliance with United Nations Security Council resolutions enforcing the cease-fire that had brought an end to the 1991 "Desert Storm" ejection of Iraqi occupying forces from Kuwait.

16.    The deployment of U.S. troops to the region for Operation Southern Watch was considered a peacetime deployment within a friendly host country.

17.    The United States Air Force servicemembers of the 4404th Wing (Provisional) contributed the air component of Operation Southern Watch.  Of the more than 5,000 personnel of the 4404th Wing assigned to four countries, 2,300 American airmen were quartered in the American sector of Khobar Towers, just east of Dhahran Air Base, and operated from the flightline at King Abdul Aziz Air Base, also known as Dhahran Air Base.  Most of these servicemembers were serving 90-day rotation tours.

18.    At approximately ten minutes before 10 p.m. on Tuesday, June 25, 1996, a large gasoline tanker truck pulled up alongside the perimeter wall of the Khobar Towers complex. The driver jumped out, ran into a waiting car that had pulled up near the truck, and sped off.

19.    Security guards near the top of Building 131, the dormitory in Khobar Towers closest to the truck started to give warnings about the unusual vehicle location.  The truck exploded with great force within about 15 minutes. The investigation determined that the force of the explosion was the equivalent of 20,000 pounds of TNT. The Defense Department said that it was the largest non-nuclear explosion ever up to that time.

20.    The explosion sheared off the face of Building 131 and damaged every other building in the complex. Nineteen members of the United States Air Force were killed in the explosion, and hundreds of other Air Force members were injured.

*Iranian Support and Sponsorship of the Attack*

21.    The attack on Khobar Towers was carried out by individuals recruited principally by a senior official of the IRGC, Brigadier General Ahmed Sharifi. Sharifi, who was the operational commander, planned the operation and recruited individuals for the operation at the

Iranian embassy in Damascus, Syria. He provided the passports, the paperwork, and the funds for the individuals who carried out the attack.

22.    The truck bomb was assembled at a terrorist base in the Bekaa Valley in Lebanon which was jointly operated by the IRGC and by the terrorist organization known as Hezbollah. The individuals recruited to carry out the bombing referred to themselves as "Saudi Hezbollah," and they drove the truck bomb from its assembly point in the Bekaa Valley to Dhahran, Saudi Arabia.

23.    The terrorist attack on the Khobar Towers was approved by Ayatollah Khamenei, the Supreme leader of Iran at the time. It was also approved and supported by the Iranian Minister of Intelligence and Security at the time, Ali Fallahian, who was involved in providing intelligence security support for the operation. Fallahian's representative in Damascus, a man named Nurani, also provided support for the operation.

24.    Under Director Louis Freeh, the FBI conducted a massive and thorough investigation of the attack, using over 250 agents.

25.    Based on that investigation, an Alexandria, Virginia, grand jury returned an indictment on June 21, 2001, against 13 identified members of the pro-Iran Saudi arm of the Hezbollah organization. The indictment's description of the plot to bomb the Khobar Towers complex frequently refers to direction and assistance from Iranian government officials.

26.    In addition, as a result of this investigation, the FBI also obtained a great deal of information linking the defendant to the bombing from interviews with six admitted members of the Saudi Hezbollah organization, who were arrested by the Saudis shortly after the bombing. These six individuals admitted to the FBI their complicity in the attack on the Khobar Towers and admitted that senior officials in the Iranian government provided them with funding, planning,

training, sponsorship, and travel necessary to carry out the attack on the Khobar Towers.  The six individuals also indicated that the selection of the target and the authorization to proceed was done collectively by Iran, MOIS, and IRGC, though the actual preparation and carrying out of the attack was done by the IRGC.

27.    The FBI obtained specific information from the six about how each was recruited and trained by the Iranian government in Iran and Lebanon, and how weapons were smuggled into Saudi Arabia from Iran through Syria and Jordan. One individual described in detail a meeting about the attack at which senior Iranian officials, including members of the MOIS and IRGC, were present.  Several stated that IRGC directed, assisted, and oversaw the surveillance of the Khobar Towers site, and that these surveillance reports were sent to IRGC officials for their review. Another told the FBI that IRGC gave the six individuals a large amount of money for the specific purpose of planning and executing the Khobar Towers bombing.

28.    In numerous cases for close to two decades, this Court has held Iran liable – as a foreign state sponsor of international terrorism, initially pursuant to 28 U.S.C. § 1605(a)(7) and subsequently pursuant to 28 U.S.C. § 1605A – for Hezbollah's terrorist acts of murder and mayhem. *See, e.g.*, *Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138 (D.D.C. 2016); *Valencia v. Islamic Republic of Iran*, 774 F. Supp. 2d 1 (D.D.C. 2010); *Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181 (D.D.C. 2008); *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006); *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40 (D.D.C. 2006); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d (D.D.C. 2002); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2002);  *Wagner v. Islamic Republic of Iran*, 172 F. Supp.2d 128 (D.D.C. 2001); *Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27 (D.D.C. 2001); *Polhill v. Islamic Republic of Iran*, No. 00-CV-1789 TPJ, 2001 U.S. Dist. LEXIS 15322, 2001 WL

34157508 (D.D.C. Aug. 23, 2001); *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27 (D.D.C. 2001); *Anderson v. Islamic Republic of Iran*, 90 F. Supp. 2d 107 (D.D.C. 2000), and *Higgins v. Islamic Republic of Iran*, No. 1:99-CV-00377 CKK, 2000 U.S. Dist. LEXIS 22173, 2000 WL 33674311 (D.D.C. Sept. 21, 2000).

29.    Specifically, *Gration v. Islamic Republic of Iran*, No. 21-1859 (BAH), 2023 WL 5221955 (D.D.C. 2023); *Mustard v. Islamic Republic of Iran*, No. 21-163 (BAH), 2023 WL 1778193 (D.D.C. 2023) *Aceto v. Islamic Republic of Iran*, No. CV 19-464 (BAH), 2020 U.S. Dist. LEXIS 22084, 2020 WL 619925 (D.D.C. Feb. 7, 2020); *Schooley v. Islamic Republic of Iran*, No. CV 17-1376 (BAH) 2019 U.S. Dist. LEXIS 108011, 2019 WL 2717888 (D.D.C. June 27, 2019); *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1 (D.D.C. 2018); *Valencia*, 774 F. Supp. 2d 1; *Heiser*, 466 F. Supp. 2d 229; *Blais*, 459 F. Supp. 2d 40; and *Rimkus*, 575 F. Supp. 2d 181 arose out of the bombing of Khobar Towers and dealt with identical issues regarding the liability of Iran for the attack on Khobar Towers.  In those cases, the Court found that "the Khobar Towers bombing was planned, funded, and sponsored by senior leadership in the government of the Islamic Republic of Iran; the IRGC had the responsibility of working with Saudi Hezbollah to execute the plan, and the MOIS participated in the planning and funding of the attack," *Rimkus,* 575 F. Supp. 2d at 195; *see also Schooley*, 2019 LEXIS 108011 at * 284-85; *Aceto,* 2020 LEXIS 22084 at *7; *Heiser*, 466 F. Supp. 2d at 265; *Blais*, 459 F. Supp. 2d at 48; and *Valencia,* 774 F. Supp. 2d. at 11-12.

30.    Iran's motive in providing material support to Hezbollah in carrying out the bombing of Khobar Towers was to intimidate and terrorize the U.S. forces deployed to Saudi Arabia, the injured servicemembers' immediate family members, and the international community.

31.    Iran is collaterally estopped from denying that it is liable for Hezbollah's actions, particularly in regard to Hezbollah's bombing of Khobar Towers.

## V.    INDIVIDUAL ALLEGATIONS

32.    Plaintiff **Steven Kerr** was stationed at the Khobar Towers complex on June 25, 1996, as a firefighter and crew chief with the U.S. Air Force's 4404th Civil Engineer Squadron. At the time of the bombing, Steven and other firefighters were approximately 10 miles away when they felt and heard the explosion. Initially believing it to be an aircraft explosion, Steven soon saw the large mushroom cloud over Khobar Towers and he and his crew quickly responded to the scene. Upon arrival, they found the area in chaos, with debris, shattered glass, and injured personnel everywhere. Steven and his crew immediately began triage, treating blast injuries and glass impalement wounds. After approximately an hour, Steven was sent to search for survivors in Building 131, where the most extensive damage occurred. While searching the severely damaged building, he found one deceased individual and observed large amounts of blood, debris, and destruction. He and his crew had to exit the building due to its unstable condition. After the bombing, Steven and his team were assigned to standby duty during the demolition of Building 131. He experienced heightened anxiety and fear that persisted during his remaining time at the base, including an incident where Saudi military police drew weapons on he and his team during a bonfire dispute. Steven experienced ongoing psychological trauma after the attack, including nightmares, flashbacks, and hypervigilance in public spaces. He was diagnosed with PTSD. He received the Air Force Achievement Medal with Valor and the Armed Forces Expeditionary Medal for his actions during and after the bombing. He was given a disability rating by the VA.

33.    Plaintiff **Karen Kerr**, the wife of Plaintiff **Steven Kerr**, learned of the Khobar Towers bombing while at the airport with a friend. She saw the news of the attack and, realizing

her husband was stationed there, began reaching out to Ellsworth Air Force Base for information. After hours of waiting with extreme worry, she was finally told Steven was safe. When Steven returned home months later, Karen immediately noticed that he had changed. He had become withdrawn, irritable, and drank excessively. Their marriage suffered for several years, with Steven becoming emotionally distant and short-tempered. The bombing also caused Steven to develop sleep problems, including violent movements during sleep, leading to a later diagnosis of sleep apnea, which Karen believes is related to his PTSD. Their lives were permanently affected by the emotional and psychological toll the bombing had on Steven, straining their relationship and family life.

### COUNT I
### ASSAULT
### By Surviving Injured Plaintiff
### (Under 28 U.S.C. § 1605A(c))

34.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

35.     During the bombing of the Khobar Towers, Hezbollah, with the material support of defendant Iran, intentionally and willfully acted to cause harm to Steven Kerr, thereby putting him in fear for his life and in imminent apprehension of harm and injury or intended to put Plaintiff Steven Kerr in imminent apprehension of such contact, as a direct result of the bombers' actions.

36.     As a direct and proximate result of the willful, wrongful, and intentional act of Hezbollah, with the material support of defendant Iran, Plaintiff Steven Kerr was injured in that he endured imminent apprehension of harm, extreme mental anguish, and pain and suffering, all to his damage.

**COUNT II**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**By Surviving Injured Plaintiff**
**(Under 28 U.S.C. § 1605A(c))**

37.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

38.    The actions of defendant Iran of providing material support to Hezbollah, causing the bombing of the Khobar Towers complex, constitutes extreme and outrageous conduct intended to cause the Plaintiff Steven Kerr severe emotional distress.

39.    The actions by defendant Iran were undertaken deliberately, intentionally, willfully, maliciously, wantonly and recklessly, with knowledge that the attack on Khobar Towers would cause severe emotional distress to the United States Air Force personnel who were housed in Khobar Towers.

40.    The actions of defendant Iran did in fact cause the bombing and subsequently was the cause in fact of Plaintiff Steven Kerr suffering severe emotional distress.

41.    As a direct consequence of the actions of defendant Iran, Plaintiff Steven Kerr suffered severe emotional distress, extreme mental anguish, shock, and psychological injuries.

42.    Defendant Iran, by engaging in this intentional, extreme, outrageous, reckless and unlawful conduct, intentionally and recklessly inflicted severe emotional distress upon Steven Kerr.

**COUNT III**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AND LOSS OF SOLATIUM**
**By Karen Kerr as the Immediate Family Member of Plaintiff Steven Kerr**
**(Under 28 U.S.C. § 1605A(c))**

43.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

11

44.     The actions of defendant Iran of providing material support to Hezbollah, causing the bombing of the Khobar Towers complex, constitutes extreme and outrageous conduct intended to cause severe emotional distress to Plaintiff Karen Kerr who is an immediate family member of Plaintiff Steven Kerr.

45.     The actions by defendant Iran were undertaken deliberately, intentionally, willfully, maliciously, wantonly, and recklessly, with knowledge that the attack on Khobar Towers would cause severe emotional distress to the immediate family members of the United States Air Force personnel who were killed or injured in the bombing of the Khobar Towers.

46.     Plaintiff Karen Kerr who is an immediate family member of Plaintiff Steven Kerr was aware that the bombing of the Khobar Towers had taken place, knew that her loved one was present at the Khobar Towers, feared that her loved one was killed or injured and ultimately learned that her loved one was either killed, or survived but was injured in the attack.

47.     The actions of defendant Iran did in fact cause the bombing and subsequently was the cause in fact of Karen Kerr's severe emotional distress.  As a direct consequence of the actions of defendant Iran, Karen Kerr as the immediate family member of Plaintiff Steven Kerr suffered severe emotional distress, shock, extreme mental anguish, pain and suffering, loss of solatium, loss of society and companionship.

48.     Defendant, by engaging in this intentional, extreme, outrageous, reckless and unlawful conduct, intentionally and recklessly inflicted severe emotional distress upon Plaintiff Karen Kerr.

### COUNT IV
### PUNITIVE DAMAGES
### By All Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

49.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

50.     Defendant's conduct in providing material support to Hezbollah for the bombing of Khobar Towers was outrageous, criminal, malicious, willful, and wanton in its reckless indifference to human life and the rights of others, a threat to public safety and international peace and security, and in violation of fundamental norms of international law, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court grant judgment in their favor against defendant Iran and grant plaintiffs:

A.  Compensatory damages against defendant Iran in amounts to be determined by the Court;

B.  Punitive damages;

C.  Pre-judgment interest;

D.  Post-judgment interest; and

E.  Such other and further relief as the Court may determine to be just and equitable in the circumstances, including but not limited to leave of court to amend this Complaint as the interest of justice requires.

Respectfully submitted,

Date: September 12, 2025

_____/s/ Joshua M. Ambush_

Joshua M. Ambush

Bar No. MD 27025

Law Offices of Joshua M. Ambush, LLC

106 Old Court Road, Suite 303

Baltimore, Maryland 21208

Phone: (410) 484-2070

Facsimile: (410) 484-9330

joshua@ambushlaw.com