**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STEVEN KERR, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No. 1:25-cv-3190 (BAH) |
| | * | |
| ISLAMIC REPUBLIC OF IRAN, | * | |
| | * | |
| Defendant. | * | |

*****************************************************************************

**PLAINTIFFS' MOTION FOR ALTERNATIVE SERVICE BY ELECTRONIC MAIL UPON DEFENDANT AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

INTRODUCTION ........ 1
I. RELEVANT BACKGROUND ........ 3
A. Procedural History ........ 3
B. Plaintiffs' Strict Compliance with Section 1608(a) ........ 4
C. Every Channel Section 1608(a) Prescribes Is Presently Unavailable ........ 5
II. LEGAL STANDARD ........ 7
III. ARGUMENT ........ 7
A. Plaintiffs Strictly Complied with Section 1608(a), and Service Was Unsuccessful ........ 7
B. Further Attempts Under Section 1608(a) Offer No Reasonable Prospect of Effecting Service ........ 8
C. The Decisions of This District on Alternative Service Upon Iran ........ 9
D. Electronic Mail to Iran's Permanent Mission Is Reasonably Calculated to Give Actual Notice ........ 13
E. The Equities Overwhelmingly Favor Plaintiffs ........ 15
IV. REQUESTED RELIEF ........ 16

**TABLE OF AUTHORITIES**

**Cases**

*Ackley v. Islamic Republic of Iran*, No. 20-cv-621 (BAH), 2022 WL 3354720 (D.D.C. Aug. 12, 2022) .......... 4

*Akrami v. Islamic Republic of Iran*, No. 1:25-cv-00428 (TNM/ZMF) (D.D.C.).......... 12, 13

*Angellino v. Royal Family Al-Saud*, 688 F.3d 771 (D.C. Cir. 2012) .......... 7

*Azadeh v. Gov't of the Islamic Republic of Iran*, No. 16-cv-1467, 2018 WL 4232913 (D.D.C. Sept. 5, 2018) .......... 6

*Bae v. Democratic People's Republic of Korea*, No. 1:20-cv-02260 (EGS) (D.D.C.). 3, 10, 11, 13

*Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26 (D.C. Cir. 2015) .......... 7, 15

*Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39 (D.D.C. 2008) .......... 7

*Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40 (D.D.C. 2006) .......... 3

*Breezee v. Islamic Republic of Iran*, No. 1:23-cv-03392 (BAH), 2025 WL 2719250 (D.D.C. Sept. 24, 2025) .......... 4, 5, 15

*Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43 (D.D.C. 2009) .......... 4

*Dehnoushi v. Islamic Republic of Iran*, No. 1:25-cv-02109 (RDM), 2026 WL 1786419 (D.D.C. June 22, 2026) .......... 11, 12

*Doe v. Islamic Republic of Iran*, No. 1:26-cv-02507-MAU, Minute Order (D.D.C. Aug. 31, 2026) .......... passim

*Does v. Democratic People's Republic of Korea*, No. 1:23-cv-00273 (TJK) (D.D.C.) .......... 11

*Estate of Crespo v. Democratic People's Republic of Korea*, No. 1:22-cv-01514 (CKK) (D.D.C.) .......... 3, 10, 11, 13

*Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006) .......... 3

*Hutan v. Islamic Republic of Iran*, No. 1:25-cv-00837-ACR, Minute Order (D.D.C. Apr. 16, 2026) .......... passim

*John Farshid Doe v. Islamic Revolutionary Guard Corps*, No. 1:26-cv-00334 (CJN), Order (D.D.C. June 9, 2026).......... 2, 3, 8, 9

*Mahvi v. Islamic Republic of Iran*, No. 1:25-cv-00059-TNM-MAU, Minute Order (D.D.C. June 17, 2026) .......... passim

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) .......... 7, 9, 15

*Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005) .......... 10

*Republic of Sudan v. Harrison*, 587 U.S. 1 (2019) .......... 14, 15

*Schooley v. Islamic Republic of Iran*, No. 17-cv-1376 (BAH), 2019 WL 2717888 (D.D.C. June 27, 2019) .......... 4

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994).......... 12, 13

*Uno Doe v. Islamic Republic of Iran*, No. 1:26-cv-01002 (APM) (D.D.C.) .......................... 12, 13

**Rules and Statutes**

28 U.S.C. § 1605A ........................................................................................................ 11

28 U.S.C. § 1608 ........................................................................................................ passim

Fed. R. Civ. P. 4(f)(3) ........................................................................................................ 10, 11

LCvR 7(c) ........................................................................................................ 16

LCvR 7(m) ........................................................................................................ 16

Vienna Convention on Diplomatic Relations art. 22, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95 ........................................................................................................ 15

**Other Authorities**

Cong. Rsch. Serv., R48887, *U.S. Conflict with Iran* (Mar. 26, 2026) ............................................ 5

Pursuant to 28 U.S.C. § 1608 and the authority recognized in this District's recent orders authorizing alternative service upon Iranian defendants, Plaintiffs Steven Kerr and Karen Kerr respectfully move this Court for an order authorizing service upon Defendant the Islamic Republic of Iran ("Iran") by electronic mail to the Permanent Mission of the Islamic Republic of Iran to the United Nations at iran@un.int and to the Ministry of Foreign Affairs of the Islamic Republic of Iran at info@mfa.gov.ir, together with a certified Farsi translation of each document.

## INTRODUCTION

Plaintiffs have completed each step that 28 U.S.C. § 1608(a) prescribes. On October 9, 2025, the Clerk of Court dispatched the summons, Complaint, and Notice of Suit, together with certified Farsi translations of each, to the head of Iran's Ministry of Foreign Affairs by FedEx pursuant to § 1608(a)(3). ECF No. 9; ECF No. 9-1. The package was returned marked "NO SERVICE" — the notation handwritten twice across the face of the returned waybill. ECF No. 10-2 at 1 (Ex. 1). On October 22, 2025, the Clerk dispatched two copies of the same materials to the U.S. Department of State for transmittal through diplomatic channels pursuant to § 1608(a)(4). ECF No. 12; ECF No. 12-1. More than ten months have passed. The Department of State has not effected service, and it has confirmed in writing that it cannot. On April 14, 2026, the Department's Judicial Assistance Team advised Plaintiffs' counsel that "service upon Iranian defendants under Sec. 1608(a)(4) is not possible at this time" and that "Kerr v. Iran was mailed to our embassy before the conflict began and it's pending with our colleagues in Bern until further action can be taken." Ex. 2. And on September 3, 2026, in response to counsel's renewed inquiry following the phased reopening of the Swiss mission in Tehran, the Department reiterated that "service upon Iranian defendants under Sec. 1608(a)(4) is not possible at this time," that it "may continue to hold any pending requests until such a time as we are able to

provide the service requested or circumstances change," and that cases pending at the embassy "will remain there until operations resume and the cases can be transmitted to the MFA." Ex. 3; Ex. 4 (Swiss mission's limited reopening).

The 2026 armed conflict between the United States and Iran has left every remaining channel unavailable. The United States Postal Service has suspended acceptance of all items destined to Iran "due to logistics impacts resulting from the conflict in the Middle East," DHL's own shipping system lists Iran as "Shipment service unavailable," and UPS confirms there is "No Service Available" from the United States to Iran. Exs. 5–7. The carrier used for Plaintiffs' prior attempt returned the package unserved.

Judges of this District have divided on whether a court may authorize service upon a foreign state by means other than those § 1608(a) lists where those methods have failed or are unavailable. In four orders entered this year, three judicial officers have authorized service upon Iranian defendants by electronic mail to Iran's Permanent Mission to the United Nations at iran@un.int. *See Hutan v. Islamic Republic of Iran*, No. 1:25-cv-00837-ACR, Minute Order (D.D.C. Apr. 16, 2026) (Reyes, J.) (Ex. 8); *John Farshid Doe v. Islamic Revolutionary Guard Corps*, No. 1:26-cv-00334 (CJN), Order (D.D.C. June 9, 2026) (Nichols, J.) (Ex. 9); *Mahvi v. Islamic Republic of Iran*, No. 1:25-cv-00059-TNM-MAU, Minute Order (D.D.C. June 17, 2026) (Upadhyaya, Mag. J.) (Ex. 10); *Doe v. Islamic Republic of Iran*, No. 1:26-cv-02507-MAU, Minute Order (D.D.C. Aug. 31, 2026) (Upadhyaya, Mag. J.) (Ex. 11). Two of those orders, *Hutan* and *Farshid Doe*, arose under § 1608(b)(3)(C), which expressly permits court-directed service on an agency or instrumentality of a foreign state; the other two, *Mahvi* and *Doe*, granted the same relief as to Iran itself under § 1608(a). Two judges of this Court have likewise directed alternative service upon the Democratic People's Republic of Korea after diplomatic service

through the Department of State stalled. *Estate of Crespo v. Democratic People's Republic of Korea*, No. 1:22-cv-01514 (CKK), Minute Order (D.D.C. Aug. 30, 2023); *Bae v. Democratic People's Republic of Korea*, No. 1:20-cv-02260 (EGS), Minute Order (D.D.C. Dec. 4, 2023). Other decisions of this District have declined to authorize such service upon Iran; Plaintiffs address them in Part III.C. In *Mahvi* and *Hutan*, electronic service has been carried out and documented, and the Clerk has entered default. Exs. 12–13.

Plaintiffs' posture is at least as strong as that of any of those movants. The *Farshid Doe* and *Doe* plaintiffs asked the court to find the statutory methods unavailable without attempting them; the *Hutan* plaintiff had attempted § 1608(a)(3) only; and the *Mahvi* plaintiff, like Plaintiffs here, had attempted both § 1608(a)(3) and § 1608(a)(4) without success. Plaintiffs strictly complied with § 1608(a)(3) and § 1608(a)(4), and service was unsuccessful — the precise predicate on which *Doe* and *Mahvi* rest: "[i]f Plaintiffs strictly complied with § 1608(a)'s requirements but were unsuccessful at serving Defendants, Plaintiffs may serve Defendants by alternate methods." Ex. 11. The certified Farsi translations the statute requires have already been prepared and twice dispatched; the only step remaining is a means of transmission that functions.

## I. RELEVANT BACKGROUND

### A. Procedural History

This action arises from Iran's orchestration of the June 25, 1996 bombing of the United States Air Force facility at the Khobar Towers in Dhahran, Saudi Arabia, which killed 19 American servicemembers and wounded hundreds of others. Plaintiff Steven Kerr is an injured American servicemember; Plaintiff Karen Kerr is his wife. This Court has adjudicated Iran's responsibility for the Khobar Towers bombing repeatedly. *See, e.g., Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40 (D.D.C. 2006); *Estate of Heiser v. Islamic Republic of Iran*, 466 F.

Supp. 2d 229 (D.D.C. 2006); *Schooley v. Islamic Republic of Iran*, No. 17-cv-1376 (BAH), 2019 WL 2717888 (D.D.C. June 27, 2019); *Ackley v. Islamic Republic of Iran*, No. 20-cv-621 (BAH), 2022 WL 3354720 (D.D.C. Aug. 12, 2022); *Breezee v. Islamic Republic of Iran*, No. 1:23-cv-03392 (BAH), 2025 WL 2719250 (D.D.C. Sept. 24, 2025). Iran has never appeared in any of them.

Plaintiffs were formerly plaintiffs in *Breezee*. Following this Court's July 14, 2025 ruling that their addition by amended complaint required renewed service upon Iran under § 1608, *see Breezee*, ECF No. 71 at 2–5, the Court severed Plaintiffs' claims into this action by Minute Order dated September 9, 2025, and Plaintiffs filed their Complaint on September 12, 2025. ECF No. 2. The Clerk issued the summons, and this case was designated as related to *Breezee*. ECF Nos. 3, 5.

**B. Plaintiffs' Strict Compliance with Section 1608(a)**

Service under § 1608(a)(1) and (a)(2) is unavailable on its face: no special arrangement for service exists between Plaintiffs and Iran, and Iran is not a party to any applicable international convention on the service of judicial documents. *See Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 51 (D.D.C. 2009).

Plaintiffs proceeded under § 1608(a)(3). Plaintiffs filed their Affidavit Requesting Foreign Mailing and Letter to the Clerk, ECF Nos. 7, 7-1, and on October 9, 2025 the Clerk of Court certified that she dispatched the summons, Complaint, and Notice of Suit, together with a certified Farsi translation of each, by FedEx to the head of the Ministry of Foreign Affairs of the Islamic Republic of Iran in Tehran. ECF No. 9; ECF No. 9-1. The package was returned marked "NO SERVICE." ECF No. 10-2 at 1 (Ex. 1).

Plaintiffs then proceeded under § 1608(a)(4). Plaintiffs filed a second Affidavit Requesting Foreign Mailing, ECF No. 10, and on October 22, 2025 the Clerk certified that she dispatched two copies of the summons, Complaint, and Notice of Suit, with certified Farsi translations, to the U.S. Department of State, Office of Legal Affairs, Bureau of Consular Affairs, for transmittal to Iran through diplomatic channels. ECF No. 12; ECF No. 12-1. Under § 1608(c)(1), such service becomes effective "as of the date of transmittal indicated in the certified copy of the diplomatic note." No diplomatic note has issued. As of the date of this motion — more than ten months after the Clerk's dispatch — the Department of State has not transmitted Plaintiffs' documents to Tehran. *See Breezee*, 2025 WL 2719250, at *22 (finding personal jurisdiction after an unsuccessful § 1608(a)(3) attempt followed by completed diplomatic service under § 1608(a)(4)).

**C. Every Channel Section 1608(a) Prescribes Is Presently Unavailable**

On February 28, 2026, U.S. and Israeli forces began the military campaign against Iran described in the Congressional Research Service's report. *See* Cong. Rsch. Serv., R48887, *U.S. Conflict with Iran* 2 (Mar. 26, 2026). On April 14, 2026, in response to Plaintiffs' counsel's request for a status update in this case, the Department of State's Judicial Assistance Team formally confirmed that "[w]hile the Embassy of the Swiss Confederation is serving as protecting power for U.S. interests in Iran, the Foreign Interests Section is temporarily closed until further notice. Given the security situation in Iran, service upon Iranian defendants under Sec. 1608(a)(4) is not possible at this time"; that "Kerr v. Iran was mailed to our embassy before the conflict began and it's pending with our colleagues in Bern until further action can be taken"; and that the Department was "unable to give [counsel] a precise timetable for when service may

be accomplished." Ex. 2. On September 3, 2026 — after the Swiss mission's phased reopening, and in response to counsel's request for a written statement that could be presented to the Court — the Department reiterated that "service upon Iranian defendants under Sec. 1608(a)(4) is not possible at this time"; that it "may continue to hold any pending requests until such a time as we are able to provide the service requested or circumstances change"; that cases "currently pending at our embassy . . . will remain there until operations resume and the cases can be transmitted to the MFA"; and that it remained "unable to give [counsel] a precise timetable for when service may be accomplished." Ex. 3. The Swiss Federal Department of Foreign Affairs, whose embassy houses the Foreign Interests Section that serves as the United States' protecting power in Iran, reports that the Embassy "has been open again since 3 May 2026," that "[o]nly limited consular services will be available initially," and that "[p]reparations for the resumption of full embassy operations are underway." Ex. 4 (captured Sept. 3, 2026). The mission's partial reopening has thus not restored the diplomatic channel: four months after it, the Department of State still cannot transmit Plaintiffs' documents.

The foreign-mail channel is equally closed. The United States Postal Service maintains Iran on its published list of international mail service suspensions, effective March 3, 2026, having "temporarily suspended acceptance of items destined to Iran due to logistics impacts resulting from the conflict in the Middle East"; DHL's own shipping system lists Iran as "Shipment service unavailable"; and UPS confirms there is "No Service Available" from the United States to Iran. Exs. 5–7. When the Clerk of this Court attempted § 1608(a)(3) service on Iran in *Azadeh v. Gov't of the Islamic Republic of Iran*, the package went by DHL, and the Clerk's Certificate of Mailing included "a copy of the DHL waybills and tracking numbers for each package." No. 16-cv-1467, 2018 WL 4232913, at *14 (D.D.C. Sept. 5, 2018) (report and

recommendation of Harvey, Mag. J.). The Clerk dispatched Plaintiffs' service package through FedEx, but it was returned unserved, marked "NO SERVICE." ECF Nos. 9, 10-2 (Ex. 1). FedEx's online rate tool separately returned "Unfortunately FedEx does not service this address" for the Tehran destination queried. Ex. 14 (captured Sept. 1, 2026).

## II. LEGAL STANDARD

Section 1608(a) prescribes four methods for service upon a foreign state "in descending order of preference," and a plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012) (quoting *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008)). Strict adherence to the terms of § 1608(a) is required. *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015).

In two cases, Magistrate Judge Upadhyaya has concluded that where a plaintiff has strictly complied with § 1608(a) and service has nevertheless proven impossible, the court may authorize an alternative method of service consistent with due process, which requires only that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see* Exs. 10–11. Others have concluded that § 1608(a) leaves no room for such relief. *See* Exs. 15–16; Part III.C, *infra*. Plaintiffs ask the Court to adopt the former approach on the record presented here.

## III. ARGUMENT

### A. Plaintiffs Strictly Complied with Section 1608(a), and Service Was Unsuccessful

The order entered in *Doe v. Iran* on August 31, 2026 states the approach Plaintiffs ask this Court to adopt: "[i]f Plaintiffs strictly complied with § 1608(a)'s requirements but were

unsuccessful at serving Defendants, Plaintiffs may serve Defendants by alternate methods." Ex. 11; *accord* Ex. 10 (*Mahvi*). Plaintiffs satisfy that predicate literally, not constructively. In *Farshid Doe* and *Doe*, the movants showed that the statutory methods were unavailable and had not attempted them. In *Hutan*, the plaintiff had attempted § 1608(a)(3), and the Clerk's mailing was returned undelivered. In *Mahvi*, the plaintiff reported that its § 1608(a)(3) certified mailing had been refused and that its § 1608(a)(4) request remained unexecuted by the Department of State, *Mahvi*, ECF No. 17 at 2, and the court found that the plaintiff "has exhausted the four statutory methods." Ex. 10. Plaintiffs here stand where the *Mahvi* plaintiff stood. The Clerk dispatched Plaintiffs' § 1608(a)(3) package to Tehran and it came back unserved; the Clerk dispatched Plaintiffs' § 1608(a)(4) package to the Department of State and it has sat untransmitted for more than ten months, a period during which the Department has twice confirmed in writing that it cannot transmit it. If alternative service was warranted in those four cases, it is warranted *a fortiori* here.

### B. Further Attempts Under Section 1608(a) Offer No Reasonable Prospect of Effecting Service

Plaintiffs' prior § 1608(a)(3) mailing was returned unserved, and the current carrier evidence provides no reason to expect a renewed mailing to succeed. Exs. 1, 5–7, 14. Section 1608(c)(2), moreover, makes (a)(3) service effective only upon a "signed and returned postal receipt," which no such mailing has produced. A renewed § 1608(a)(4) request would join a queue the Department of State has twice confirmed it cannot move — one it "may continue to hold . . . until such a time as we are able to provide the service requested or circumstances change." Exs. 2–3. Plaintiffs have performed each statutory step once. Repeating them into channels that are, by the Department's own account, closed would produce no notice to Iran and would advance no interest the statute protects.

To be clear, Plaintiffs do not ask the Court to withdraw or supersede the pending § 1608(a)(4) request, which remains lodged with the Department of State and which the Department has stated it "may continue to hold" pending a change in circumstances. Ex. 3. Should the Department ultimately effect diplomatic service, that service will independently satisfy the statute. The relief sought here ensures only that Plaintiffs' case is not suspended indefinitely while every channel the statute prescribes remains, by the Department's own account, closed.

**C. The Decisions of This District on Alternative Service Upon Iran**

In *Hutan*, Judge Reyes found good cause to authorize service by electronic mail "[g]iven the unavailability of service through foreign mail via the Clerk of Court, diplomatic channels, and physical delivery." Ex. 8. In *John Farshid Doe*, Judge Nichols held that "[b]ecause the methods of service ordinarily prescribed by statute are unavailable due to the ongoing military conflict between the United States and Iran, the Court may authorize a method 'reasonably calculated to give actual notice,'" and found that "service by electronic mail to the Permanent Mission of the Islamic Republic of Iran to the United Nations at iran@un.int satisfies that standard, as the Permanent Mission's role as Iran's diplomatic representation makes it well-suited to ensure that the proper parties receive actual notice." Order at 1 (Ex. 9). In *Mahvi*, Magistrate Judge Upadhyaya applied *Mullane* and authorized email service on Iran itself at the same address, observing that Iran "maintains an official, diplomatic presence with the United Nations in New York and provides the aforementioned email on its Ministry of Foreign Affairs webpage." Ex. 10. And on August 31, 2026, in *Doe v. Iran*, the same relief was granted as to Iran, the IRGC, and MOIS, with service ordered by a date certain and a certificate of service due within seven days. Ex. 11.

In *Mahvi* and *Hutan*, the method has also been carried out. In *Mahvi*, counsel filed a return reporting electronic service on June 18, 2026, and the Clerk entered default against Iran on August 19, 2026. *Mahvi*, ECF Nos. 20, 23 (Ex. 12). In *Hutan*, counsel filed a return reporting electronic service on April 17, 2026, and the Clerk entered default against Iran, the IRGC, and MOIS on June 22, 2026. *Hutan*, ECF Nos. 13, 15 (Ex. 13). Those entries show that the proposed method can be executed and documented; they do not resolve the statutory question presented here, which no court in those cases has yet reached at the default-judgment stage.

Judges of this Court have taken a similar course as to North Korea. In *Estate of Crespo v. Democratic People's Republic of Korea*, No. 1:22-cv-01514 (CKK), the plaintiffs had dispatched a § 1608(a)(3) package that was returned, had lodged a § 1608(a)(4) request as to which the Department of State reported that normal diplomatic transmission was then unavailable, and had shown that neither FedEx nor DHL would deliver to North Korea. *Crespo*, ECF No. 16-1 at 2–3; *id.*, ECF No. 13-1. Judge Kollar-Kotelly first directed service by mailing to North Korea's Permanent Representative to the United Nations, with leave to renew a request for publication if that failed, Minute Order (D.D.C. Aug. 30, 2023); when it failed, she authorized service by publication, citing Rule 4(f)(3) and *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005), Minute Order (D.D.C. Sept. 26, 2023); and upon the plaintiffs' affidavit of publication she found "effective service upon Defendant Democratic People's Republic of Korea" and set the answer date under § 1608(d). Minute Order (D.D.C. Oct. 12, 2023). The Clerk entered default, and the Department of State later delivered the § 1608(a)(4) packet as well. *Crespo*, ECF Nos. 21, 23, 26. In *Bae v. Democratic People's Republic of Korea*, No. 1:20-cv-02260 (EGS), after the Department reported that it had "not taken any action" on the plaintiffs' § 1608(a)(4) request, Judge Sullivan directed the plaintiffs to the same methods. Minute Order (D.D.C. Dec. 4, 2023).

The *Bae* court later denied default judgment for want of subject-matter jurisdiction under § 1605A without reaching service or personal jurisdiction, *Bae*, Mem. Op. & Order, ECF No. 41, at 7–10 (D.D.C. Aug. 15, 2025), and that ruling is on appeal, No. 25-7132 (D.C. Cir.). Neither *Crespo* nor *Bae* has yet produced a ruling sustaining personal jurisdiction on the alternative service alone.

Plaintiffs also note that in *Does v. Democratic People's Republic of Korea*, No. 1:23-cv-00273 (TJK), Judge Kelly, after initially authorizing service by publication and electronic mail under Rule 4(f)(3), questioned whether *Crespo* and *Bae* supported alternative service on a foreign state and required the plaintiffs to attempt § 1608(a)(4), which the Department of State then completed; the court's later opinion described the alternative-service attempt as "faulty" and rested personal jurisdiction on the completed diplomatic service. Minute Order (D.D.C. Sept. 26, 2025); Mem. Op. at 8–9, 14 (D.D.C. May 28, 2026) (Ex. 17). Unlike those plaintiffs, Plaintiffs here lodged that request more than ten months ago and have the Department's written confirmation that it cannot be executed.

Plaintiffs acknowledge *Dehnoushi v. Islamic Republic of Iran*, No. 1:25-cv-02109 (RDM), 2026 WL 1786419 (D.D.C. June 22, 2026). There, Judge Moss denied a renewed motion to serve the IRGC and MOIS by electronic mail as agencies or instrumentalities under § 1608(b)(3)(C), held that those entities must be served as the foreign state itself under § 1608(a), and, while recognizing that the plaintiffs' "failure to [effect service] in accordance with Section 1608(a) is not attributable to any lack of diligence on their part," stated that diligence "does not authorize the Court to reclassify the IRGC or the MOIS as agencies or instrumentalities of Iran in defiance of binding precedent or to authorize alternative service on a foreign state beyond the methods prescribed by Congress in Section 1608(a)." *Id.* at *2. Plaintiffs do not minimize that

statement. The statement is not confined to requests under § 1608(b); it speaks to alternative service on a foreign state generally, and Plaintiffs recognize that it presents an objection to this motion. Three points nonetheless bear on the Court's consideration. First, the motion before Judge Moss sought to reclassify the IRGC and MOIS as agencies or instrumentalities so that § 1608(b)(3)(C) would apply, and the court decided that question. Plaintiffs seek relief under § 1608(a), not reclassification under § 1608(b), but they recognize that the court's broader reasoning rejects the solution they propose to the unavailability of statutory service. Second, the denial was without prejudice, and the court expressly invited a renewed motion on the theory that the plaintiffs "should be considered to have successfully effected service under Section 1608(a)." *Id.* at *2. *Dehnoushi* thus left open a renewed showing of effective service under § 1608(a), although it did not authorize the prospective alternative relief requested here; and the Department of State has since confirmed a further time, in this case, that the diplomatic channel remains unavailable. Ex. 3. Third, after *Dehnoushi*, and on a record that cited it, Magistrate Judge Upadhyaya granted the relief Plaintiffs seek as to Iran itself under § 1608(a) in *Doe v. Iran*. Ex. 11.

Other judicial officers of this District have declined to authorize electronic-mail service upon Iran, and Plaintiffs bring those decisions to the Court's attention. In *Uno Doe v. Islamic Republic of Iran*, No. 1:26-cv-01002 (APM), Judge Mehta denied a renewed motion, reasoning that § 1608(a) "sets forth the exclusive procedures for service on a foreign state," that *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994), "forecloses" court-directed service premised on actual notice, and that the court "cannot craft a judicial exception to § 1608(a) simply to meet the moment." Order, ECF No. 11, at 1–2 (D.D.C. July 28, 2026) (Ex. 15). In *Akrami v. Islamic Republic of Iran*, No. 1:25-cv-00428 (TNM/ZMF), Judge McFadden

twice directed the plaintiffs to await completion of diplomatic service, Minute Orders (D.D.C. Sept. 22, 2025; Jan. 16, 2026), and Magistrate Judge Faruqui then denied a renewed motion brought under § 1608(b)(3)(C). Mem. Op. & Order, ECF No. 21 (D.D.C. July 14, 2026) (Ex. 16). Although *Akrami* principally addressed the IRGC's classification under *Transaero*, it also rejected alternative service based on wartime futility, observing that "Congress did not include a safety valve where service was futile under § 1608(a)." *Id.* at 4. Plaintiffs acknowledge that this reasoning, like Judge Mehta's, weighs against their request. Plaintiffs note two respects in which this record differs. The *Uno Doe* plaintiffs, who filed suit after the conflict began, had not attempted service under § 1608(a)(3) or § 1608(a)(4) and sought relief on the ground that those methods were operationally impossible, *Uno Doe*, ECF No. 10 at 2–3, 9–10 (July 22, 2026); their renewed motion did document carrier inquiries, and the July 28 order did not rest on any failure to establish unavailability. Plaintiffs here attempted service under § 1608(a)(3) and lodged their request under § 1608(a)(4) before the conflict began. And Plaintiffs supply the Department of State's September 3, 2026 response concerning their own pending packet, confirming that diplomatic service remained unavailable after the Swiss mission's reopening and that the Department would hold the request. Ex. 3. This Court has not yet had occasion to decide whether § 1608(a) permits relief on such a record. Plaintiffs submit that the approach of *Mahvi*, *Doe*, *Crespo*, and *Bae*, applied to the facts here, supports the relief requested.

**D. Electronic Mail to Iran's Permanent Mission Is Reasonably Calculated to Give Actual Notice**

Iran maintains an official diplomatic presence at the United Nations in New York notwithstanding the current hostilities, and it publishes the address Plaintiffs propose — iran@un.int — on its own Ministry of Foreign Affairs webpage as its channel of communication. Exs. 10–11. Plaintiffs propose to transmit the summons, Complaint, and Notice of Suit, together

with the certified Farsi translations the statute requires, to that address and directly to the Ministry of Foreign Affairs at info@mfa.gov.ir. The identical translated documents were dispatched with both of Plaintiffs' prior service attempts.

Plaintiffs recognize that *Republic of Sudan v. Harrison*, 587 U.S. 1 (2019), bears on this request. *Harrison* held that a § 1608(a)(3) mailing must be addressed to the foreign minister at the minister's office in the foreign state, declined to read the "reasonably calculated to give actual notice" standard of § 1608(b)(3)(B) into § 1608(a)(3), and identified a foreign state's "mission to the United Nations" as one of the destinations that a looser reading of § 1608(a)(3) would leave courts to sort out. *Id.* at 12, 18, 19. The Court also cautioned that "there are circumstances in which the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction," and that the service rules of § 1608(a)(3) "clearly fall into this category." *Id.* at 19. Plaintiffs accept both propositions. They do not ask the Court to treat electronic mail to the Mission as compliance with § 1608(a)(3), and they do not ask the Court to excuse any step the statute requires. Plaintiffs completed § 1608(a)(3) as *Harrison* prescribes, by dispatch through the Clerk to the Minister of Foreign Affairs in Tehran, and the attempt failed. *Harrison* itself described what follows a failed mailing: the plaintiff "may attempt service once again under § 1608(a)(3), and if that attempt fails, [it] may turn to § 1608(a)(4)." *Id.* at 19. That is the route Plaintiffs took. Their § 1608(a)(3) package was properly addressed and came back unserved; a second mailing has no realistic prospect of success on the current carrier evidence, Exs. 5–7, 14; and their § 1608(a)(4) request has been lodged with the Department of State for more than ten months and, by the Department's own account, cannot be completed. Exs. 2–3. *Harrison* did not decide what a court may do when the route it described has been followed to its end without service. Nor is the proposed method

the one *Harrison* was concerned with. The Department of State's longstanding position, grounded in Article 22 of the Vienna Convention, is that the premises of a mission are inviolable. *Id.* at 16–17. Electronic mail does not deliver process to those premises or seek access to them. Plaintiffs recognize that the message would nonetheless be received through the Mission's own communications channel, and that *Harrison* does not address that distinction. Each of the four orders on which Plaintiffs rely directed service to the same address.

Iran has been the defendant in the five Khobar Towers actions cited above, each adjudicating the same attack at issue here, and Plaintiffs' own claims were the express subject of this Court's July 14, 2025 order in *Breezee* requiring that Iran be served with them. Iran has appeared in none of those actions. Due process requires notice reasonably calculated to reach the defendant and an opportunity to respond, *Mullane*, 339 U.S. at 314; whether Iran elects to respond is, as always, Iran's choice.

**E. The Equities Overwhelmingly Favor Plaintiffs**

The considerations the D.C. Circuit weighed in *Barot* — the plaintiff's good-faith efforts at service, the prejudice to the plaintiff, and the absence of prejudice to the foreign state — all point one way. 785 F.3d at 29. Plaintiffs' good faith is a matter of record: two completed statutory attempts, at Plaintiffs' expense, executed by the Clerk. Iran suffers no prejudice: it will receive the summons, Complaint, and Notice of Suit, in Farsi, at its own diplomatic mission — the same notice § 1608 exists to provide. And the prejudice to Plaintiffs is concrete. Steven Kerr was injured in 1996. Plaintiffs' claims have already been delayed by the re-service ruling and severance in *Breezee*, and Plaintiffs intend to seek recovery from the United States Victims of State Sponsored Terrorism Fund, for which a final judgment is the gateway. Every additional

month spent waiting on channels the Department of State has formally declared non-functional is delay that produces no notice to Iran and serves no interest the statute protects.

## IV. REQUESTED RELIEF

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order that:

1. AUTHORIZES Plaintiffs to serve Defendant the Islamic Republic of Iran by transmitting the summons, the Complaint, the Notice of Suit, and all required attachments, together with a certified Farsi translation of each, by electronic mail to the Permanent Mission of the Islamic Republic of Iran to the United Nations at iran@un.int and to the Ministry of Foreign Affairs of the Islamic Republic of Iran at info@mfa.gov.ir, within thirty (30) days of the Court's Order;
2. DIRECTS Plaintiffs to file a certificate of service, together with proof of transmission, within seven (7) days of effecting service; and
3. GRANTS such other and further relief as the Court deems just and proper.

Pursuant to LCvR 7(m), undersigned counsel states that conferral with Defendant was not possible: Defendant has not been served and no counsel has entered an appearance on its behalf. A proposed order is submitted herewith pursuant to LCvR 7(c).

Dated: September 8, 2026

Respectfully Submitted,

/s/ Joshua M. Ambush

Joshua M. Ambush (Bar No. MD27025)
Law Offices of Joshua M. Ambush, LLC
106 Old Court Road
Suite 303
Baltimore, Maryland 21208
Phone: (410) 484-2070
Fax: (410) 484-9330
Email: joshua@ambushlaw.com
Attorney for Plaintiffs