# EXHIBIT 16

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AKRAMI, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ISLAMIC REPUBLIC OF IRAN, *et al.*,**<br><br>**Defendants.** | **No. 25-cv-00428-TNM-ZMF** |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this case against the Islami Republic of Iran ("Iran") and the Islamic Revolutionary Guard Corps ("IRGC"), under the terrorism exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A. *See generally* Compl., ECF No. 1. Before the Court is Plaintiffs' renewed request for authorization of alternative service. For the reasons set forth below, the Court DENIES Plaintiffs' request.

## I. BACKGROUND

Plaintiffs first requested that the Court authorize alternative service on the IRGC by electronic means pursuant to 28 U.S.C. § 1608(b)(3)(C). *See* Pls.' Mot. for Alt. Serv., ECF No. 12. On September 22, 2025, Judge McFadden denied Plaintiffs' request for alternative relief and directed Plaintiffs to continue service under § 1608(a)(4). *See* Min. Order. On January 15, 2026, Plaintiffs again requested the Court authorize alternative service. *See* Pls.' Status Rep. and Mot. for Alt. Serv. 1–2, ECF No. 15. On January 16, 2026, Judge McFadden denied Plaintiffs' second request and directed Plaintiffs to await the completion of diplomatic service under § 1608(a)(4). *See* Min. Order.

On March 11, 2026, Plaintiffs filed a renewed motion for alternate service pursuant to § 1608(b)(3)(C), citing a material change in circumstances that makes service under § 1608(a)(4) impossible. *See generally* Pls.' Mot. for Alt. Serv., ECF No. 18. On April 23, 2026, Judge McFadden referred the case for full case management to the undersigned. *See* Min. Order.

## II. **DISCUSSION**

Section 1608 governs service of process under the FSIA. Section 1608 establishes two separate pathways plaintiffs must follow depending on the nature of the entity being served. *See Holladay v. Islamic Republic of Iran*, 406 F.Supp.3d 55, 59 (D.D.C. 2019) (citing 28 U.S.C. § 1608). Section 1608(a) applies if Plaintiffs seek to serve a "foreign state" or a "political subdivision" of a foreign state. 28 U.S.C. § 1608(a). Section 1608(b) applies if Plaintiffs seek to serve an "agency or instrumentality of a foreign state." 28 U.S.C. § 1608(b).

The question, then, is whether the IRGC is classified as a "foreign state" / "political subdivision of a foreign state" or as an "agency or instrumentality of a foreign state." 28 U.S.C. § 1608. In *Transaero, Inc.*, the D.C. Circuit promulgated the test to resolve such question.[1] *See* 30 F.3d at 151–53. If the entity's "core functions" are primarily governmental, it is classified as a foreign state or political subdivision of a foreign state. *Id.* If the entity's "core functions" are primarily commercial, it is classified as an agent or instrumentality of a foreign state. *Id.*

The IRGC's core functions are governmental. *See Holladay*, 406 F. Supp. 3d at 59. The IRGC is a branch of the Iranian Armed Forces and performs military and governmental functions. *See id.* As such, the IRGC is "so closely bound up with the structure of the state" that the courts

[1] On May 14, 2026, this Court directed Plaintiffs to address the applicability of *Transaero, Inc.*, to their pending motion. *See* Min. Order (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994)). On May 18, 2026, Plaintiffs filed a supplemental memorandum in response. *See generally* Pls.' Mot. for Alt. Serv. Suppl. Mem. ("Pls.' Suppl. Mem.") 4, ECF No. 19.

must consider the IRGC as the "'foreign state' itself," not an "agency or instrumentality of the state." *Id.* (citing *Transaero, Inc.*, 30 F.3d at 153). Because "[t]he IRGC . . . must be treated as the State of Iran itself," Plaintiffs must effect service under § 1608(a). *Dehnoushi v. Islamic Republic of Iran*, No. 25-cv-2109, 2026 WL 1786419 at *1 (D.D.C. June 22, 2026). As such, the Court must deny Plaintiffs' request for service under § 1608(b).

Plaintiffs counter that the D.C. Circuit misinterpreted the FSIA in holding that § 1608's applicability turned on whether a defendant's core functions were governmental or commercial. *See* Pls.' Suppl. Mem. at 8–11 (citing *Transaero Inc.*, 30 F.3d at 151). A brief refresher on judicial hierarchy is in order: this Court sits below the D.C. Circuit. Plaintiffs are free to argue that the D.C. Circuit got it wrong. This Court, however, is not free to agree.

Plaintiffs further argue that the United States' 2019 designation of the IRGC as a Foreign Terrorist Organization (FTO) proves that the IRGC is a distinct legal entity from the Iranian government. *See id.* at 12. However, the court in *Dehnoushi* and *Holladay* already rejected this argument. *See Dehnoushi*, No. 25-cv-2109, 2026 WL 1786419 at *2; *Holladay*, 406 F. Supp. 3d at 59. Both cases held that the IRGC's FTO designation does not change the fact that the IRGC—at its core—functions as a branch of the Iranian Armed Forced that "engage[s] in governmental activit[y] and [is] therefore covered by Section 1608(a)." *Dehnoushi*, No. 25-cv-2109, 2026 WL 1786419 at *2; *see also Holladay*, 406 F. Supp. 3d at 59 (citing *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003).

Finally, Plaintiffs ask the Court to sidestep the statute because of practical considerations. *See* Pls.' Suppl. Mem. at 14. USPS suspended mail service to Iran long ago. *See id.* at 15. Typically, the U.S. Department of State has directed plaintiffs to effectuate services via the Swiss Embassy in Iran. *See Dehnoushi*, No. 25-cv-2109, 2026 WL 1786419 at *2. However, Plaintiffs could not do so here because the Swiss Embassy was not providing consular services. *See* Pls.' Suppl. Mem.

at 16–17. This was due to "[t]he on-again, off-again war." Connor O'Brien, Leo Shane III & Mark Satter, *Trump notifies Congress of new war against Iran*, POLITICO (July 13, 2026, 5:50 PM), https://www.politico.com/news/2026/07/13/trump-notifies-congress-of-new-war-against-iran-00995170. Congress did not include a safety valve where service was futile under § 1608(a). And courts are not empowered to create one.

## III. CONCLUSION

Service briefly appeared feasible after the Swiss Embassy in Tehran reopened.[2] That window, however, may already have closed. On July 10, 2026, President Trump notified Congress that the United States was again at war with Iran. *See id.* This makes renewed disruptions to consular operations a distinct possibility. That leaves Plaintiffs with two options: (1) wait for Swiss consular operations to restart after the war actually ends, *see* Eleanor Skelly, Caroline Kenny & Dareh Gregorian, *32 times Trump suggested the war in Iran was almost over*, NBC NEWS (July 10, 2026, 5:55 PM), https://www.nbcnews.com/politics/donald-trump/32-times-trump-suggested-iran-war-was-almost-over-rcna385846; or (2) petition Congress to create a new mechanism for alternative service on a foreign state during armed conflict. Regardless, there is no third option involving the judiciary.

Zia M.Faruqui

Digitally signed by Zia M.Faruqui
Date: 2026.07.14 16:17:39 -04'00'

Date: July 14, 2026

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

---

[2] The Swiss Embassy in Tehran began gradually reopening on April 24, 2026, following its temporary closure on March 11, 2026. *See* Press Release, Switzerland Federal Department of Foreign Affairs, Swiss embassy in Tehran to gradually reopen (Apr. 24, 2026), https://www.eda.admin.ch/en/newnsb/MJg1PNTQB9x9F36KO7oLF. It reopened on May 3, 2026. *See Swiss representations in Iran*, SWITZERLAND FEDERAL DEPARTMENT OF FOREIGN AFFAIRS (May 1, 2026), https://www.schweiz-iran.eda.admin.ch/en/swiss-representations-contacts. While visa services are suspended, limited consular services are available. *See id.*